UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE V. LONGHI,<br><br>Plaintiff,<br><br>v.<br><br>KHALED MONAWAR,<br><br>Defendant. | Case No. 14-cv-04554-KAW<br><br>**ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE; GRANTING LEAVE TO AMEND COMPLAINT**<br><br>Re: Dkt. No. 12 |

Lawrence V. Longhi ("Plaintiff") moves for default judgment against Khaled Monawar ("Defendant"). Pursuant to Civil Local Rule 7-1(b), the Court deems this matter suitable for disposition without oral argument and VACATES the hearing currently set for November 19, 2015. As discussed below, the allegations in the complaint are insufficient to establish this Court's jurisdiction over the case or its jurisdiction over Defendant. Accordingly, the Court DENIES the motion WITHOUT PREJUDICE and GRANTS Plaintiff LEAVE TO AMEND the complaint to cure these pleading deficiencies.[1]

## I.    BACKGROUND

### A.    Factual background

This action stems from a failed joint venture between the parties. Plaintiff alleges that in October 2001, after the destruction of the World Trade Center on September 11, 2001, Defendant, his father, and his uncle approached Plaintiff about "reconstructing Afghanistan[,] which was expected to boom as a result of the fall of the Taliban." (Compl. ¶¶ 6, 7, Dkt. No. 1.) Defendant apparently had family ties there, "which could be exploited to obtain business." (*Id.* ¶ 6.)

---

[1] On January 20, 2015, Plaintiff consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).

Defendant's uncle specifically represented that at the time, he had a connection with the Director of the World Bank, and Ashrah Ghani, "who [had been] recently elected President of Afghanistan [*sic*]" and "who would finance much of the rebuilding work to be done. . . ." (*Id.*)

Defendant and his family members asked for Plaintiff's help with serving as a project facilitator and finding suitable contractors to perform the work. (*Id.* ¶ 8.) As compensation, Plaintiff was to receive one-third of any proceeds generated from any resulting reconstruction projects. (*Id.*) Plaintiff, Defendant, and Defendant's family formalized their dealings through a series of memorandums of understanding ("MOUs"), the last of which was dated June 2, 2003. (*Id.* ¶ 9.) They also incorporated in January 2003, as Afgamco, Inc. According to Plaintiff, he is Chairman, CEO, and a shareholder of the company. (*Id.* ¶ 10.) Defendant was also a shareholder and President, and his uncle served as a silent shareholder. (*Id.*)

Plaintiff fulfilled his obligations under the joint venture agreement. (*Id.* ¶¶ 11-19.) He identified a number of contractors, including LoBuono Engineering Inc. and the Michael Baker Corporation. (*Id.* ¶¶ 11.) After negotiations, Afgamco, the Baker Corporation, and LoBouno/Weidlinger signed a Memorandum of Understanding dated March 17, 2003 ("March MOU"). (*Id.* ¶ 19.) Pursuant to the March MOU, the three entities would share equally in any profits generated by the joint venture, a 10% management fee would apply to any project, and Afgamco would be paid a commission based on project revenues. (*Id.* ¶ 19; Longhi Decl., Ex. B, Dkt. No. 13.)

Plaintiff asserts that in October 2004, he learned that the Michael Baker Corporation had been awarded its first contract, worth $1.2 billion, for work in Afghanistan on May 9, 2003. (*Id.* ¶ 26.) In October 2008, Monawar admitted that he had received payment on behalf of the joint venture, but he still did not pay Longhi. (*Id.* ¶¶ 26-27.) Monawar also failed to pay Plaintiff his share of other contracts, which were worth more than $8 billion. (*Id.* ¶ 28.) In addition, Defendant "stole joint venture's business quarry project which the joint venture proposed to Afghan government for development by diverting ownership of the quarry in his name." (*Id.* ¶ 29.)

///

### B. Procedural background

Plaintiff commenced this action on October 10, 2014, asserting claims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) accounting, (4) unjust enrichment, (5) breach of fiduciary duty, (6) imposition of constructive trust, (7) conversion, and (8) fraud. (Compl., Dkt. No. 1.)

On December 7, 2014, a copy of the summons and complaint was left with an unnamed Middle Eastern male at 4314 N. Larwin Avenue in Concord, California. (Cert. of Service, Dkt. No. 8.) A copy of the documents was also mailed to Defendant on that date. (*Id.* at 5.) Plaintiff moved for entry of default on January 29, 2015, which the Clerk entered the next day. (Mot. Entry of Default, Dkt. No. 9; Clerk's Default, Dkt. No. 10.) Following the entry of default, Plaintiff filed his motion for default judgment, seeking an award of $11,105,255.00 in compensatory damages and prejudgment interest, $22, 210,765.00 in punitive damages, $6,070.00 in costs, and post-judgment interest as allowed by 28 U.S.C. § 1961. (Pl.'s Mot. for Default J. ("Pl.'s Mot.") at 12-18, Dkt. No. 12.)

On July 9, 2015, the Court required Plaintiff to file a supplemental brief addressing, among other things, the allegations concerning subject matter and personal jurisdiction. (July 9, 2015, Dkt. No. 19.) Plaintiff filed a supplemental brief and supporting declarations on July 30, 2015 and August 2, 2015. (Tsadik Decl., Dkt. No. 21; Longhi Decl., Dkt. No. 22; Am. Supp. Br., Dkt. No. 23; Supp. Longhi Decl., Dkt. No. 24.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). The decision to enter a default judgment lies within the court's discretion. *Id.* at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986) (further citations omitted)); *see also Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Before assessing the merits of a motion for default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the defendants. *See Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds

these elements satisfied, it turns to seven factors ("the *Eitel* factors") to determine whether it should enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel*, 782 F.2d at 1471-72 (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to the defendant's liability are taken as true." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Televideo Sys., Inc. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings or those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) *superseded by statute on other grounds*, Pub. L. No. 100-702, 102 Stat. 4669.

### III. DISCUSSION

#### A. Subject matter jurisdiction

Plaintiff alleges that the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. (Compl. ¶ 4.) He asserts that he is a citizen of New Jersey, and he identifies Defendant as a citizen of California who resides in the City of Concord . . . . (*Id.*) "The natural person's state citizenship is . . . determined by h[is] state of domicile, not h[is] state of residence." *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). In the declaration included with his supplemental brief, Plaintiff states that he is a U.S. citizen and that his permanent home is in New Jersey. (Longhi Decl. ¶ 3.) He also states that Defendant is a U.S. citizen, that Defendant was living in California in 2006, that he has been a member of a Walnut Creek tennis club from 2009 to the present, and that Defendant's permanent home is still in Concord, California. (*Id.* ¶¶ 5-8.) The complaint, however, contains no such allegations. As necessary facts not contained in the pleadings are not established by default, the Court denies Plaintiff's motion without prejudice and grants Plaintiff leave to amend the complaint to cure this pleading deficiency.

#### B. Personal jurisdiction

Plaintiff also alleges that Defendant is a citizen of California, who has been residing in

4

Concord, California, at all relevant times.  (Compl. ¶ 2.)  In his motion, Plaintiff asserts that "this Court has general personal jurisdiction over Defendant Monawar[,] who resides in Contra Costa County, State of California."  (Pls.' Mot. at 4 (citation omitted).)  As discussed above, Plaintiff makes no allegations with respect to Defendant's domicile, and to the extent that Plaintiff wishes to rely on that basis to establish personal jurisdiction, such allegations are necessary.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . .");  *see also* Cal. Practice Guide:  Federal Civil Procedure Before Trial, Ch. 3-D § 3:60 (2015) ("'Residence' is simply the place where one lives, even temporarily, and regardless of intent to remain.  'Domicile,' on the other hand, is the place where one resides with the intent to remain indefinitely.").  Plaintiff shall remedy this pleading deficiency in his first amended complaint.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment is DENIED WITHOUT PREJUDICE.  The Court GRANTS Plaintiff LEAVE TO AMEND the complaint to cure the pleading deficiencies discussed above.

**IT IS SO ORDERED.**

Dated: 11/17/15

_____
KANDIS A. WESTMORE
United States Magistrate Judge